UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NICOLAS D.,

                            Plaintiff,

               v.

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
_____

**DECISION AND ORDER**

1:23-CV-00052 EAW

## <u>INTRODUCTION</u>

Represented by counsel, plaintiff Nicolas D. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 8; Dkt. 10). For the reasons discussed below, the Commissioner's motion (Dkt. 10) is granted and Plaintiff's motion (Dkt. 8) is denied.

## BACKGROUND

Plaintiff protectively filed his applications for DIB and SSI on July 31, 2018.  (Dkt. 3 at 351-59, 360-68).[1]  In his applications, Plaintiff alleged disability beginning January 1, 2018.[2]  (*Id.* at 21, 351, 360).  Plaintiff's applications were initially denied on September 6, 2018.  (*Id.* at 21, 147-54).  At Plaintiff's request, a telephonic hearing was held before administrative law judge ("ALJ") Scot Gulick, on March 27, 2020.  (*Id.* at 21, 104-32).  Additional telephonic hearings were held on January 29, 2021, and November 16, 2021.  (*Id.* at 21, 82-103, 46-81).  On November 26, 2021, the ALJ issued an unfavorable decision.  (*Id.* at 21-38).  Plaintiff requested Appeals Council review; his request was denied on December 14, 2022, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 7-12).  This action followed.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C.

---

[1]   When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

[2]   Although the ALJ's decision reflects an onset date of January 1, 2016, (*see* Dkt. 3 at 15), Plaintiff's applications for benefits make clear that the onset date alleged by Plaintiff is January 1, 2018.  This discrepancy is not material to the issues before the Court on the instant motions, nor does either party so argue.

§ 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a

finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id*. §§ 404.1520(d), 416.920(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. §§ 404.1509, 416.909, the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. §§ 404.1520(f), 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. §§ 404.1520(g), 416.920(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

### I.   The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920.  Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through June 30, 2025.  (Dkt. 3 at 24).  At step one, the ALJ determined that Plaintiff had engaged in substantial gainful work activity in the 4th quarter of 2018, after the onset date but continued the sequential evaluation to address the periods before and after that quarter, during which Plaintiff did not engage in substantial gainful activity.  (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: status-post surgery and chemotherapy for medulloblastoma with residual left upper extremity limitations, headaches, generalized anxiety disorder, and adjustment disorder with anxiety.  (*Id.*at 24-25).  The ALJ further found that Plaintiff's medically determinable impairments of hyperlipidemia, hypertension, allergic rhinitis, human immunodeficiency virus disease (HIV), and decreased bilateral hearing were non-severe.  (*Id.* at 25).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id.* at 25).  The ALJ particularly considered the criteria of Listings 11.02, 11.05, 11.07, and 12.06 in reaching his conclusion.  (*Id.* at 25-28).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following additional limitations:

He should never climb ladders, ropes, or scaffolds, but he can frequently climb ramps and stairs, stoop, kneel, crouch, and crawl, and he can occasionally balance. He can push/pull occasionally to the left. Reaching overhead to the left and in other directions to the left is limited to occasionally. Handling, fingering, and feeling with the left hand are limited to occasionally. He should avoid all exposure to unprotected heights. He can occasionally operate a motor vehicle and occasionally work around moving mechanical parts. He can tolerate frequent exposure to humidity and wetness; dust, odors, fumes, and pulmonary irritants; extreme cold; extreme heat; and vibration. He can work in an environment with moderate noise (such as found in a typical office setting.) He is capable of performing simple, routine, and repetitive tasks but not at a production rate pace.

(*Id.* at 28). At step four, the ALJ found that Plaintiff was not able to perform past relevant work. (*Id.* at 35).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of ticket taker, furniture rental consultant, and usher. (*Id.* at 37). The ALJ accordingly concluded that Plaintiff was not disabled as defined in the Act. (*Id.* at 37).

## II.  The Commissioner's Determination is Supported by Substantial Evidence and Free from Reversible Error

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing that: (1) the ALJ erred in assessing medical opinion evidence; and (2) the ALJ failed to appropriately consider Plaintiff's need for a job coach in determining the RFC. (Dkt. 8-1 at 20-26). The Court has considered these arguments and, for the reasons discussed below, finds them without merit.

**A.**     **Evaluation of Medical Opinion Evidence**

Plaintiff argues that the ALJ's evaluation of certain medical evidence was flawed. Specifically, he argues that the ALJ erred when he found the opinion of reviewing medical expert, Aaron Williams, Psy.D., to be "generally persuasive," but did not include all of the limitations in Dr. Williams' opinion in the RFC finding.

Under the regulations applicable to Plaintiff's claims, the ALJ must consider the persuasiveness of the medical opinions of record, and "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).   When a medical source provides one or more medical opinions, the Commissioner will consider the medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections.   *Id*.   Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding."   *Id*. at §§ 404.1520c(c), 416.920c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency.   *Id*. at §§ 404.1520c(a), 416.920c(a).   With respect to "supportability," "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical

opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). With respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

"[T]he ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence." *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022). It is further not error for an ALJ to give only partial weight to all of the medical opinions of record and make an RFC finding based on the record as a whole. *Id.* However, an ALJ may not "ignore[] or mischaracterize[] medical evidence or cherry-pick[] evidence that supports his RFC determination while ignoring other evidence to the contrary." *Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 585 (S.D.N.Y. 2022).

At the request of the ALJ, Dr. Williams, an agency psychologist, completed a medical statement of ability to do work-related activities (mental) form on September 19, 2020. (Dkt. 3 at 794-803). In it, Dr. Williams indicated that Plaintiff has no significant limitations in the ability to understand, remember, and carry out instructions, insofar as verbal information is utilized and processing of the information is not reliant on visual skills. (*Id.* at 795). He opined that Plaintiff had no social limitations affecting his ability to interact appropriately with supervisors, co-workers, and the public. (*Id.* at 96). Dr. Williams noted that Plaintiff presents with some difficulties with pace, "related to possible nonverbal learning disability." (*Id.* at 796). In addition, Dr. Williams completed medical

interrogatories which reflect his opinion that Plaintiff has no limitations in interacting with others and adapting or managing himself, but has moderate limitations in concentrating, persisting, and pace, and moderate limitations in understanding, remembering, and applying information as pertains to visual information. (*Id.* at 799). Dr. Williams noted that Plaintiff has "no overt suggestions of deficit noted aside from visual processing difficulties possibly suggestive of nonverbal learning disability," (*id.* at 798), and that Plaintiff's nonverbal learning difficulties suggest a "moderate impact on pacing and understanding visually presented information," (*id.* at 799). He concluded that Plaintiff would benefit from additional time to complete tasks and that instructions should be presented orally rather than visually when possible. (*Id.* at 802).

In explaining his assessment of Dr. Williams' opinions, the ALJ stated:

Dr. Williams['] opinion is generally persuasive. Dr. Williams is a specialist in the mental health field, and he had the opportunity to review the complete documentary record that was available at the time he responded to the interrogatory questions. He provided a detailed explanation with references to the evidence in the record to support his opinion. As previously discussed, he offered inconsistent opinions about [Plaintiff's] capacity for understanding, remembering, or applying information, which does detract from the overall persuasiveness of his opinion. However, the overall record and the objective evidence, as discussed throughout the decision and as referenced by Dr. Williams in his interrogatory responses, does show [Plaintiff] has had some difficulties with pace related to possible nonverbal disability, albeit medically determinable diagnosed mental impairments include only generalized anxiety disorder, and adjustment disorder with anxiety. As previously discussed, the claimant was capable of obtaining his bachelor's degree during the relevant period and he has engaged in part time work throughout the relevant period, with work rising to the level of SGA in the 4th quarter of 2018. Mild to moderate mental limitations are supported by the overall record and the objective evidence of record. [Plaintiff's] mental impairments are treated with psychotropic medication, which he reported helps, and he had never been psychiatrically hospitalized, and he

never sought emergency treatment for chronic exacerbation of mental condition.

(*Id.* at 35).

As noted, the ALJ credited significant portions of Dr. Williams' opinion and explained his reasons for doing so. He noted Dr. Williams' specialty in the mental health field, which as discussed, is an appropriate consideration to consider in crediting the opinion of a medical provider. *Ashleigh L. v. Kijakazi*, No. 3:22-CV-675 (SVN), 2023 WL 6357000, at *7 (D. Conn. Sept. 29, 2023) ("Regarding specialization, a medical opinion is more persuasive if the medical professional giving the opinion is a specialist in the area relevant to the claimant's alleged conditions.").

He also highlighted the fact that Dr. Williams had access to the complete documentary record at the time he formulated his opinions and provided a detailed explanation with references to the evidence in the record to support his conclusions. As noted, supportability and consistency are the two most important factors for an ALJ to articulate. *Pike v. Kijakazi*, No. 23-CV-583-A, 2024 WL 554300, at *6 (W.D.N.Y. Feb. 12, 2024) ("[S]ince the ALJ expressly considered whether such opinions were supported by their own records and 'whether they were consistent with the other medical evidence of record[,] [t]he Court finds no basis to disturb the Commissioner's determination.'" (quoting *Kenneth S. v. Comm'r of Soc. Sec.,* No. 6:21-CV-06391 EAW, 2023 WL 1960218, at *4 (W.D.N.Y. Feb. 13, 2023))).

In not fully crediting Dr. Williams' opinion regarding Plaintiff's ability to understand, remember or apply information, the ALJ explained that he found it somewhat inconsistent in the sense that Dr. Williams concluded in one part of the form that Plaintiff's

ability to understand, remember, and carry out instructions is not affected by his impairment (Dkt. 3 at 795), while at the same time, in the corresponding interrogatory response, found that Plaintiff has moderate visual information limitation in understanding, remembering, or applying information (*id.* at 799) and explained that "no significant limitations exist insofar as verbal information [is] utilized and not reliant on visual skills," (*id.* at 26). Nevertheless, the ALJ found persuasive Dr. Williams' opinion that Plaintiff has some difficulties with pace due to a possible nonverbal disability, notwithstanding that Plaintiff did not have diagnosed mental impairments beyond generalized anxiety disorder and adjustment disorder with anxiety. (*Id.* at 35).

As support for his conclusions regarding his assessment of Dr. Williams' opinions, the ALJ appropriately considered Plaintiff's ability to obtain a bachelor's degree and engage in part-time work throughout the relevant time period. *See M.-M., v. Kijakazi*, No. 5:21-CV-14, 2022 WL 1223202, at *9 (D. Vt. Apr. 26, 2022) ("Nevertheless, an ALJ may consider college attendance as one of many factors in evaluating the severity of a claimant's impairments."); *Silva v. Saul*, No. 18-CV-6206 CJS, 2019 WL 2569595, at *5 (W.D.N.Y. June 21, 2019) ("An ALJ may also properly consider a claimant's demonstrated ability to work part-time during the relevant period as evidence that the claimant is not completely disabled."); *Dingman v. Berryhill*, No. 6:16-CV-06107 (MAT), 2017 WL 1100619, at *9 (W.D.N.Y. Mar. 24, 2017) ("Courts in this Circuit have found that an ALJ may properly consider a claimant's ability to attend college or other schooling—even with accommodations—as among the claimant's 'daily activities' that are relevant under 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3)."). He also took into account the fact that

Plaintiff's mental impairments are managed with psychotropic medications and that Plaintiff had never been psychiatrically hospitalized or sought emergency treatment for his mental conditions. *See Troy F. v. Comm'r of Soc. Sec.*, No. 1:21-CV-362-DB, 2023 WL 3645487, at *8 (W.D.N.Y. May 25, 2023) (finding appropriate for ALJ to consider plaintiff's "routine, limited, and conservative outpatient mental health treatment" and relatively benign mental examinations "including normal cognitive functioning, cooperative behavior, good eye contact, no psychomotor agitation, normal speech, intact memory and concentration, and appropriate thought content and processes" (internal quotation marks omitted)); *Kentrel J. v. Comm'r of Soc. Sec.*, No. 1:21-CV-197-DB, 2023 WL 2601971, at *8 (W.D.N.Y. Mar. 22, 2023) (holding that ALJ properly considered that "there was no evidence of any psychiatric hospitalizations or emergency room visits, and, overall, the record showed that Plaintiff had received routine and conservative mental health treatment, and his mental health symptoms were generally well controlled with medication" in assessing opinion evidence).

Plaintiff contends that by crediting the opinion finding him to have difficulties maintaining pace, the ALJ was obligated to include all of the limitations contained therein in the RFC. Specifically, Plaintiff argues that by finding Dr. Williams' opinion regarding pace generally persuasive, the ALJ was also required to credit Dr. Williams' suggestion that Plaintiff would need additional time to complete tasks. But it is well settled that the ALJ is not required to formulate the RFC by adopting any one medical opinion in its entirety. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *see also William M. v. Comm'r of Soc. Sec.*, No. 1:19-CV-1665-DB, 2021 WL 3077885, at *4 (W.D.N.Y. July

21, 2021) (explaining that determination of the RFC is not a medical determination but an administrative finding which is reserved to the Commissioner, and "the ALJ's conclusion need not perfectly correspond with any of the opinions of medical sources cited in his decision, because the ALJ is entitled to weigh all of the evidence available to make an RFC finding that is consistent with the record as a whole" (alterations, citations, and quotations omitted)); *Janet L. K. v. Saul*, No. 1:20-CV-0725 (GTS), 2021 WL 2592899, at *4 (N.D.N.Y. June 24, 2021) ("The ALJ need not adopt opinions in their entirety, but may instead adopt only those portions that she finds to be consistent with the record as a whole.").  Accordingly, to the extent Plaintiff's argument for remand rests on the fact that the ALJ did not adopt in their entirety the limitations included in any one medical opinion in the record, that argument is contrary to established law and remand is not required on that basis.

Moreover, the ALJ did include limitations in the RFC that accounted for Dr. Williams' conclusion that Plaintiff has a moderate limitation in concentrating, persisting, or maintaining pace by restricting Plaintiff to simple, routine, and repetitive tasks but not at a production rate pace.  *See Joanna v. Cmm'r*, No. 1:21-CV-130-DB, 2024 WL 580348, at *11 (W.D.N.Y. Feb. 13, 2024) ("Even if the ALJ had been persuaded by Dr. Farmer's opinion, the ability to perform unskilled work such as the ALJ found here, is consistent with even moderate limitations."); *Diaz v. Comm'r of Soc. Sec. Admin.*, No. 22CV2256KMKVR, 2023 WL 6390172, at *7 (S.D.N.Y. Sept. 29, 2023) (opinion that plaintiff had moderate limitations in concentration and ability to perform at a consistent pace is consistent with an RFC limitation for simple and routine work not production rate

pace).  That the ALJ did not also include a requirement that Plaintiff be given extra time to compete tasks does not direct a finding that the RFC was not supported by substantial evidence or that the ALJ did not properly assess the medical opinion evidence. Accordingly, remand on this basis is not warranted.

      **B.**      **Requirement of a Job Coach**

Plaintiff also argues that the ALJ was aware that Plaintiff had used a job coach and received vocational services during the relevant time period but failed to include a requirement for a job coach in the RFC, which constitutes error warranting remand.  The Court disagrees.

In assessing a claimant's credibility, the Commissioner's regulations require ALJs to employ a two-step inquiry.  *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010). "First, the ALJ must determine whether the claimant suffers from a 'medically determinable impairment[ ] that could reasonably be expected to produce'" his symptoms. *Id.* (quoting 20 C.F.R. § 404.1529(c)(1)).  "Second, the ALJ must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's [subjective] contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry."  *Id.*; *see also Mary C. o/b/o Kimberly C. v. Comm'r of Soc. Sec.*, No. 6:21-cv-06358-TPK, 2023 WL 4699921, at *4 (W.D.N.Y. July 24, 2023) (describing two-step inquiry for evaluating a claimant's credibility).

In this case, the ALJ applied the two-step inquiry.  At the first step, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to

cause the alleged symptoms," but that "the statements from non-medical sources, including but not necessarily limited to [Plaintiff], concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Dkt. 3 at 29).

As part of that analysis, the ALJ did expressly acknowledge and discuss Plaintiff's use of a job coach and receipt of vocational services. Specifically, the ALJ stated:

> [Plaintiff] has received vocational services throughout the relevant period. Although wages only rose to the level of SGA once, in the 4th quarter of 2018, [Plaintiff] engaged in part time work activity during the relevant period other than when he isolated due to Covid 19. Vocational service notes dated December 11, 2018, indicate [Plaintiff's] lack of research throughout the vocational evaluation prevented adequate progress from being made. (4F/7). Subsequently, while working with another vocational services provider, [Plaintiff] accepted a position with the Buffalo Erie County Library as a part time Senior Page in July of 2019. (6F/64). His Job Developer Trainer, Lynn Conrad, submitted e-mail correspondence on behalf of the claimant on March 25, 2020, in which it was noted the claimant struggled in several areas at the library, and that it is their professional opinion the claimant would not have vocational success if he exceeded 20 hours per week. (13E) The record contains Ms. Conrad's job coaching notes from Suburban Adult Service, Inc., which are dated May 30, 2019 through November 22, 2020. (7F; 18F; 19F). The most recent notes indicate [Plaintiff] was still receiving unemployment as of November 19, 2020, due to COVID 19, and that his job at the library was secure. At that time, he was preparing to move in with his mother. (18F/39). Vocational notes dated February 19, 2021, indicate [Plaintiff's] job at the library had been terminated due to Covid 19. (28F/9). Notes dated April 29, 2021, indicate he did not want to rush into another job, but his mother was putting pressure on him to work. (28F/10). Vocational services report dated September 8, 2021, indicates [Plaintiff] was placed in another job at Gabe's as a merchandise sorter with the employment starting on August 26, 2021 with wages of $13.00 per hour and "varied hours-mornings/afternoons." (33F/7) His job coach did not check block [Plaintiff] was unable to work 30 hours due to limitations directly related to disability. (33F/2)
> [Plaintiff's] work with vocational services and his part time employment are indications of involvement in a range of daily activity not consistent with disability from all work, such as work that could be performed within the above residual functional capacity assessment. Work activity performed

during any period in which an individual alleges that he or she was under a disability may demonstrate an ability to engage in substantial gainful activity. In addition, [Plaintiff] collected unemployment insurance benefits during the Covid 19 pandemic, for which he would have had to attest that he was ready, able, and willing to work. These attestations are inconsistent with his claim of inability to work. Notably, no medical source assessed limitations inconsistent with an ability to perform some work activity. [Plaintiff's] work record is only one of many factors to be considered in determining if [Plaintiff's] testimony is consistent with the evidence of record.

(Dkt. 3 at 29-30).

Plaintiff argues that because "[t]he ALJ acknowledged multiple times that Plaintiff had a job coach and received vocational services throughout the relevant period[,]. . . it appears that the ALJ believed Plaintiff did require a job coach during the relevant period." (Dkt. 8-1 at 24). The record does not so reflect. Instead, the ALJ's decision makes clear that while the ALJ did consider Plaintiff's use of a job coach and past work record in assessing Plaintiff's limitations, there is nothing in the decision that reflects the ALJ's belief that Plaintiff necessarily required the assistance of a job coach. Instead, he properly considered the facts relating to Plaintiff's past employment, use of vocational services, and application for unemployment benefits in connection with the credibility assessment and ultimate disability determination. This was proper. *See Davis v. Kijakazi*, No. 21CV8485VECBCM, 2023 WL 5726054, at *11 n.11 (S.D.N.Y. Aug. 18, 2023) ("Although plaintiff's part-time work did not constitute 'substantial gainful activity,' the ALJ was entitled to take it into consideration when evaluating plaintiff's subjective statements."), *report and recommendation adopted*, No. 21-CV-8485 (VEC), 2023 WL 5723011 (S.D.N.Y. Sept. 5, 2023); *Dietrich v. Comm'r of Soc. Sec.*, No. 515CV1219GTSWBC, 2016 WL 7157154, at *7 (N.D.N.Y. Nov. 15, 2016) ("Several

courts in this Circuit have concluded that the collection of unemployment benefits during the period of alleged disability was properly considered by an ALJ when assessing a plaintiff's credibility."), *report and recommendation adopted*, No. 515CV1219GTSWBC, 2016 WL 7156556 (N.D.N.Y. Dec. 7, 2016); *Cammy v. Colvin*, No. 12-CV-5810 KAM, 2015 WL 6029187, at *19 (E.D.N.Y. Oct. 15, 2015) ("Accordingly, it was proper for the ALJ to consider evidence of the plaintiff's unemployment compensation and stated willingness to work in assessing plaintiff's credibility, and the plaintiff's motion for judgment on the pleadings is denied with respect to this ground."); *Andrews v. Berryhill*, No. 17-CV-6368 (MAT), 2018 WL 2088064, at *6 (W.D.N.Y. May 4, 2018) (finding that ALJ appropriately took plaintiff's ability to engage in part-time work into account in assessing credibility).

Here, it is clear that the ALJ considered Plaintiff's prior use of a job coach and Plaintiff's testimony regarding those services. That the ALJ did not ultimately consider it necessary for inclusion in the RFC does not demonstrate error. *Sheila Renee H. v. Kijakazi*, No. 3:21-CV-00944-TOF, 2022 WL 4181723, at *5 (D. Conn. Sept. 13, 2022) ("In this case, the record did not contain evidence of a job coaching requirement sufficient to oblige the ALJ to include it in his hypothetical and RFC."). It was within the ALJ's discretion not to include such a requirement and Plaintiff's argument to the contrary essentially invites the Court to re-weigh the evidence, which is not the function of the Court. *See Cruz o/b/o M.M.W. v. Comm'r of Soc. Sec.*, No. 19CV9253(AT)(BCM), 2021 WL 4123969, at *13 (S.D.N.Y. Aug. 25, 2021) ("However, the reviewing court's task is limited to determining whether substantial evidence exists to support the ALJ's fact-finding; it may not reweigh

that evidence or substitute its judgment for that of the ALJ where the evidence is susceptible of more than one interpretation."), *report and recommendation adopted*, No. 19CIV9253(AT)(BCM), 2021 WL 4124225 (S.D.N.Y. Sept. 9, 2021); *Z.J.F. by Conkling v. Comm'r of Soc. Sec.*, No. 6:16-CV-1397 (WBC), 2018 WL 1115516, at *6 (N.D.N.Y. Feb. 27, 2018) ("Therefore, although Plaintiff cites to evidence which supported her contention that Claimant had behavioral problems, the ALJ ultimately concluded such problems were not as severe as alleged. The ALJ cited substantial evidence in the record to support his determination and therefore the ALJ's assessment of the evidence is upheld.").  Accordingly, because the Court finds that the ALJ's finding was grounded in and supported by the evidence of record, there is no basis to disturb his conclusions.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 10) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 8) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: February 16, 2024
       Rochester, New York